UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00157-GNS-HBB

JONATHAN ANDERSON                                                                                          PLAINTIFF

v.

UNITED STATES OF AMERICA                                                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's and Defendant's Motions in Limine (DN 57, 58, 59) and Defendant's Motion for Leave to File a Reply (DN 72). The motions are ripe for adjudication.

### I.     SUMMARY OF THE FACTS

Plaintiff Jonathan Anderson ("Anderson") was involved in a motor vehicle accident in May 2018 after colliding with a United States Postal Service vehicle.[1] (Compl. ¶¶ 7-9, DN 1). This action was initiated against Defendant United States of America ("United States") under the Federal Tort Claims Act ("FTCA") and is set for a bench trial on January 18, 2023. (Compl. ¶ 1; Order 1, DN 52). The parties have filed motions in limine regarding potential testimony at trial.

### II.    JURISDICTION

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(b).

### III.   STANDARD OF REVIEW

Motions in limine are like "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered . . . [and are] designed to

---

[1] Holly Johnson was a passenger in the vehicle and a plaintiff to this action, but her claims have since settled. (Report 1, DN 34).

narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). While not explicitly authorized by the Federal Rules of Evidence, courts use their "inherent authority to manage the course of trials" to decide these motions. *Luce*, 469 U.S. at 41 n.4; *see Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 834 (W.D. Ky. 2017). Rulings amount to "no more than a preliminary, or advisory, opinion" and should only "eliminate evidence that has no legitimate use at trial for any purpose." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citation omitted); *Mahaney ex rel. Est. of Kyle v. Novartis Pharms. Corp.*, 835 F. Supp. 2d 299, 303 (W.D. Ky. 2011) (citations omitted). Absent "evidence [that] is patently 'inadmissible for any purpose,'" courts may defer issues until trial "so that 'questions of foundation, relevancy and potential prejudice may be resolved in proper context.'" *United States v. Stone*, 543 F. Supp. 3d 535, 539 (W.D. Ky. 2021) (quoting *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997); *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010)); *see Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders *in limine* which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise."). Thus, decisions may be revisited "at any time and 'for whatever reason [the Court] deems appropriate.'" *Stone*, 543 F. Supp. 3d at 539 (quoting *Yannott*, 42 F.3d at 1007); *see Luce*, 469 U.S. at 41-42.

## IV. DISCUSSION

Anderson moves to exclude testimony at trial and objects to two witnesses and five exhibits for the United States. (Pl.'s Mot. Lim., DN 57). Two requests are unopposed, so they are granted.

(Def.'s Resp. Pl.'s Mot. Lim., DN 68 [hereinafter Def.'s Resp.] (maintaining no objections to requests 1—effect of verdict on the United States—and 3—attorney-client communications)).

The United States filed two motions: one to limit the testimony of Dr. John Gormley ("Dr. Gormley") and one to exclude Dr. Sushma Chandan ("Dr. Chandan") from testifying. (Def.'s Mot. Lim., DN 58; Def.'s Mot. Lim., DN 59). Anderson contests the limiting of Dr. Gormley's testimony but notes that Dr. Chandan will not be called as a witness. (Pl.'s Resp. Def.'s Mot. Lim., DN 62 [hereinafter Pl.'s Resp.]; Pl.'s Resp. Def.'s Mot. Lim., DN 70). Thus, the United States' motion to exclude Dr. Chandan (DN 59) is denied as moot.

### A. **Anderson's Motion in Limine**

#### 1. *Medicaid Payments & Collateral Sources of Income*

Anderson moves to exclude evidence of payments by Medicare or Medicaid covering his medical expenses, alleging them to be collateral sources of income and that Kentucky law prevents the admission of such evidence. (Pl.'s Mot. Lim. 2-3). Anderson maintains that the United States, if found liable, should not receive a reduction of damages for these payments. (Pl.'s Mot. Lim. 3). The United States clarifies that the relevant payments were made by Medicaid and cites various federal district court rulings for the proposition that Medicaid is not a collateral source, so it "should receive an offset for any medical bill that is paid by Medicaid and the Medicaid payment should be viewed as a reasonable payment for medical services rendered." (Def.'s Resp. 2-3 (citations omitted)). Even then, the United States alleges no prejudice would occur, as this is a bench trial and the charges do not typically reflect what was actually paid. (Def.'s Resp. 1).

This action was filed pursuant to the FTCA, under which Congress provided for the United States' liability to align with "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law *of the place where the act or omission*

*occurred*." (Compl. ¶ 1); 28 U.S.C. § 1346(b)(1) (emphasis added). Therefore, "substantive state law governs the merits of a FTCA claim," so state collateral source rules apply. *Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019) (emphasis omitted); *Douglas v. United States*, 658 F.2d 445, 449 n.5 (6th Cir. 1981) (citations omitted). The collateral source rule precludes the reduction of a plaintiff's damages by amounts received from sources other than the tortfeasor. *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 433 (6th Cir. 1999) (quoting *Jackson v. City of Cookeville*, 31 F.3d 1354, 1359 (6th Cir. 1994)). The Kentucky rule provides this safeguard when the "benefits received by an injured party for his injuries from a source *wholly independent of*, and collateral to, the tortfeasor . . . ." *Schwartz v. Hasty*, 175 S.W.3d 621, 626 (Ky. App. 2005); *see Burke Enters., Inc. v. Mitchell*, 700 S.W.2d 789, 796 (Ky. 1985) (noting that a tortfeasor cannot receive any credit for medical expense payments "paid by a collateral source to the tort victim pursuant to a contractual obligation owed to the victim from the collateral source . . . ." (emphasis omitted)).

As noted above, the United States indicates that the relevant payments were made by Medicaid. (Def.'s Resp. 2). "Medicaid is a 'cooperative federal-state public assistance program that makes federal funds available to states electing to furnish medical services to certain impoverished individuals.'" *Tennessee ex rel. Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 503 (6th Cir. 2019) (citation omitted). After the Department of Health and Human Services approves a state's Medicaid plan, "the state receives reimbursement from the federal government for a percentage of the costs of providing care to eligible individuals . . . ." *Id.* (citing *West Virginia v. U.S. Dep't of Health & Hum. Servs.*, 289 F.3d 281, 284 (4th Cir. 2002); 42 C.F.R. § 430.12). The federal reimbursement compensates Kentucky for 72.17% of its service-related

costs. Federal Financial Participation in State Assistance Expenditures, 86 Fed. Reg. 67,479 (Nov. 26, 2021) (noting the percentages for Fiscal Year 2023).[2]

Given the federal government reimbursement, the Medicaid payments do not, at this time, appear to be "wholly independent" from the United States. *See Schwartz*, 175 S.W.3d at 626; *Mitchell*, 700 S.W.2d at 796-97. It is unclear whether the Medicaid payments at issue were "pursuant to a contractual obligation" owed to Anderson. *See Burke Enters., Inc.*, 700 S.W.2d at 796. Therefore, this issue is best suited for deferral until trial. *See Sperberg*, 519 F.2d at 712. To that end, Anderson's request is denied.

### 2. *Conduct by Non-Parties*

Anderson argues that no evidence should be presented which implicates a non-party to this action as being responsible for or contributing to his injuries. (Pl.'s Mot. Lim. 4). The United States concedes that non-parties cannot be allocated fault under Kentucky law but maintains that evidence of a non-party's conduct is relevant to Anderson's burden of proof. (Def.'s Resp. 3).

Kentucky's allocation of fault statute, KRS 411.182, applies to all tort actions involving fault by more than one party and requires the factfinder to determine the total damages recoverable by the claimant and the percentage of total fault apportioned among all parties, including each claimant, defendant, third-party defendant, and persons released by agreement. KRS 411.182(1). In making this determination, the factfinder "must consider both the character of the parties' conduct and causation in allocating fault." *Louisville SW Hotel, LLC v. Lindsey*, 636 S.W.3d 508,

---

[2] Kentucky's reimbursement percentage has typically hovered around the 72%. *See* 84 Fed. Reg. 66,204 (Dec. 3, 2019) (for Fiscal Year 2021, Kentucky's percentage was 72.05); 85 Fed. Reg. 76,586 (Nov. 30, 2020) (for Fiscal Year 2022, Kentucky's percentage was 72.75); 87 Fed. Reg. 74,429 (Dec. 5, 2022) (for Fiscal Year 2024, Kentucky's percentage will be 71.78).

521 (Ky. 2021) (citing KRS 411.182(1)). This allocation, however, does not extend to non-parties. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 824 (6th Cir. 2000).

The parties' contentions to this end do not reference any specific anticipated testimony or argument. Without more, it is unclear what particular evidence is sought to be excluded. The Court will be better situated to rule upon any objections in the proper context at trial. *See Stone*, 543 F. Supp. 3d at 539; *Sperberg*, 519 F.2d at 712. Therefore, at this time, Anderson's request is denied.

### 3. *Settlement Discussions*

Anderson's fifth request maintains that settlement discussions or agreements should be excluded. (Pl.'s Mot. Lim. 4). The United States simply replies that "Rule 408 of the Federal Rules of Evidence should be enforced . . . ." (Def.'s Resp. 4). "[A]lthough substantive state law governs the merits of a FTCA claim, the Federal Rules govern procedural issues." *Gallivan*, 943 F.3d at 294 (emphases omitted). The Fed. R. Evid. 408 governs the admissibility of settlement offers and provides that such information is generally inadmissible when offered to prove or disprove the validity or value of the claim, but it also provides an exception for such evidence being used for another purpose, like demonstrating a witness's bias. Ky. R. Evid. 408; Fed. R. Evid. 408; *see Green River Elec. Corp. v. Nantz*, 894 S.W.2d 643, 646 (Ky. App. 1995). Neither party indicates when the substance or purpose of evidence detailing settlement discussions may arise. Thus, the Court will be better situated to rule on this issue at trial. *See Stone*, 543 F. Supp. 3d at 539; *Sperberg*, 519 F.2d at 712. As such, Anderson's present request is denied.

### 4. *Standard for Duty of Care*

Anderson aims to preclude misstatements of the legal standard of care and alleges that the United States cannot claim the driver's operation of the Postal Service vehicle was subjectively

reasonable, only whether the conduct was objectively reasonable. (Pl.'s Mot. Lim. 4). The United States contends that both drivers owed a duty of reasonable or ordinary care. (Def.'s Resp. 4).

To establish a negligence claim under Kentucky law, "the plaintiff must prove that the defendant: 1) owed the plaintiff a duty of care; 2) the defendant breached the standard of care by which his or her duty is measured; and 3) that the breach was the legal causation of the consequent injury." *Short v. Marvin Keller Trucking, Inc.*, 570 F. Supp. 3d 459, 463 (E.D. Ky. 2021) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003); *Wright v. House of Imps., Inc.*, 381 S.W.3d 209, 213 (Ky. 2012)). Drivers are required to maintain the same duty of care regardless of vehicle type or size, which entails "reasonable and ordinary care having due regard to traffic and other conditions[,] . . . driv[ing] at a speed not excessive under the circumstances, to keep the automobile under reasonable control, and to maintain a lookout." *Southard v. Belanger*, 966 F. Supp. 2d 727, 741 (W.D. Ky. 2013); *Mahan v. Able*, 251 S.W.2d 994, 996 (Ky. 1952) (citing *Meriweather's Adm'x v. Pickering*, 116 S.W.2d 670, 673 (Ky. 1938); *Schechter v. Hann*, 205 S.W.2d 690, 693 (Ky. 1947)); *see also Baker v. Hancock*, 772 S.W.2d 638, 639 (Ky. App. 1989) (holding that the exercise of reasonable care "must be in proportion to the danger to be avoided."); KRS 189.290(1) (requiring drivers to operate their vehicle "in a careful manner, with regard for the safety and convenience of pedestrians and other vehicles . . . ."). Notably, "[t]he motorist having the right of way may assume, although not with impunity, that another driver about to enter his path of travel will yield to him. However, the duty of reasonable care remains." *Mahan*, 251 S.W.2d at 996-97 (citations omitted). This standard "must be measured by the circumstances and the situation attending the particular case . . . ." *Baker*, 772 S.W.2d at 639 (citing *Mahan*, 251 S.W.2d at 997-98). When the duties "are equal and reciprocal, it is prejudicial error to give instructions imposing . . . unequal duties." *Ry. Express Agency, Inc. v. Bowles*, 325

S.W.2d 337, 338 (Ky. 1959) (citing *Williams v. Coleman's Adm'x*, 115 S.W.2d 584, 588 (Ky. 1938); *Dixie Ohio Express Co. v. Vickery*, 206 S.W.2d 821, 823 (Ky. 1947)). Thus, both drivers owed a duty of care, and their duties were "equal and reciprocal."

### 5. *Lay Witness Testimony of Speed and Turning*

Anderson moves to limit testimony by lay witnesses about a vehicle's speed and whether a driver intended to turn. (Pl.'s Mot. Lim. 5). Anderson concedes that witnesses may testify to their perceptions but contends that testimony providing a precise speed or any "mechanical or physical evidence" to indicate that a car will turn becomes expert testimony. (Pl.'s Mot. Lim. 5 (citing *Consol. Coach Corp. v. Earls' Adm'r*, 94 S.W.2d 6 (Ky. 1936))). The United States disagrees and maintains that testimony to that effect is admissible. (Def.'s Resp. 5 (citing *Bishop v. Anderson*, No. 5:16-CV-128-TBR, 2018 U.S. Dist. LEXIS 159636 (W.D. Ky. Sept. 18, 2018))).

Because this is an FTCA action, federal procedural rules apply. *Gallivan*, 943 F.3d at 294. Fed. R. Evid. 701 provides that a person testifies as a lay witness, and not as an expert, when his or her testimony is "rationally based" on his or her perceptions, aids in understanding the testimony or to determine a fact at issue, and is "not based on scientific, technical, or other specialized knowledge . . . ." This Court in *Bishop* held that if a witness "perceived the collision—however brief that perception might have been—they may testify as to its details, including the [vehicle]'s speed and whether [the] speed was slowing." *Bishop*, 2018 U.S. Dist. LEXIS 159636, at *5 (citation omitted). Ultimately, "[s]uch testimony requires no accident reconstructionist and no scientific evidence, or specialized knowledge" and "is exactly the type intended to be admitted under Rule 701." *Id.* (citing *Robinson v. Louisville Ry. Co.*, 112 F. 484, 487 (6th Cir. 1901)); *see Robinson*, 112 F. at 487 (concluding that opinions of a vehicle's speed are "not a question for experts," as "[n]o technical knowledge was required for such an opinion . . . [and] [t]he experience

the witnesses had had in observing the speed of passing objects would go to the weight of the testimony, not to its admissibility." (citations omitted)); *accord Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 848 (10th Cir. 1979) ("[P]ersons of reasonable intelligence and ordinary experience are uniformly permitted to express opinions as to matters such as the speed of an automobile under their observation . . . ."); *Buchanan v. Mattingly*, No. 1:10-cv-856, 2012 U.S. Dist. LEXIS 31991, at *5-6 n.4 (S.D. Ohio Mar. 9, 2012) (holding that testimony about the lay witness's belief that the defendant was making an unsafe turn was proper under Rule 701). Therefore, testimony about a vehicle's speed or an eyewitness's perceptions of the vehicle's intention to turn is subject to Fed. R. Evid. 701. As such, Anderson's request is denied.

### 6. *Bio-Mechanical Evidence*

Anderson contends the United States' witnesses cannot testify about "bio-mechanical" or "bio-medicine" evidence, including "discussion[s] of the exact amount of forces generated in this wreck or where the force was distributed" and "the precise areas of where forces were generated in this wreck." (Pl.'s Mot. Lim. 5-6). The United States argues that two of its expert witnesses—Dr. William Obremskey ("Obremskey") and Stuart Nightenhelser ("Nightenhelser")—are experts in biomechanical injury assessment and accident reconstruction, respectively. (Def.'s Resp. 7-8 (citing Def.'s Resp. Pl.'s Mot. Lim. Ex. B, DN 68-2 [hereinafter Obremskey CV]; Def.'s Resp. Pl.'s Mot. Lim. Ex. C, DN 68-3 [hereinafter Nightenhelser CV])).

The United States' witness list indicates that Obremskey is an orthopedic expert, Nightenhelser is a forensic and design engineer, and both are expected to testify consistent with the opinions in their reports and supplemental reports. (Def.'s Witness List 3, DN 56). The reports are not included in the filings, but the United States included its experts' curricula vitae. (*See* Obremskey CV; Nightenhelser CV). Obremskey has an extensive history of practicing and

9

teaching medicine as well as authoring publications, including some involving biomechanics. (Obremskey CV 2-59; *see, e.g.*, Obremskey CV 21, 49, 58-59).  Nightenhelser has spent nearly thirty years as a physicist and accident reconstructionist, conducting forensic analyses and vehicle collision reconstructions, with his "[a]reas of emphasis [being] speed determination; analysis of pre-impact motion, collision dynamics, and post-impact motion; [and] crush analysis . . . ." (Nightenhelser CV 2).  Anderson has not contested the either expert's qualifications or their ability to testify on these issues,[3] so Anderson's request is denied as it relates to the United States' expert witnesses.

### B. Anderson's Objections to Witnesses

Anderson objects to two witnesses for the United States, but he "does not object to lay witness testimony," only to potential expert testimony.  (Pl.'s Mot. Lim. 6).  The United States avers that expert testimony will not be elicited from lay witnesses.  (Def.'s Resp. 8).  Therefore, Plaintiff's objections are overruled as moot.

### C. Anderson's Objections to Exhibits

Anderson objects to five of the United States' exhibits:  Defense Exhibit 50 (Conduent Payment Integrity Solutions list of Passport Health providers); Defense Exhibit 51 (Allstate Loss History); Defense Exhibit 1 (an SF 95 Form); Defense Exhibit 17 (photograph showing the Postal Service driver's injuries); and Defense Exhibit 32 (police report).  (Pl.'s Mot. Lim. 6-7).  The United States does not contest the second and fifth objections, does not respond to the third, and contests the first and fourth.  (Def.'s Resp. 8-9).  The second, third, and fifth objections are sustained regarding Defense Exhibits 51, 1, and 32.

---

[3] The deadline for filing motions pursuant to Fed. R. Evid. 702 was August 15, 2022.  (Agreed Order, DN 40).  None were filed.

10

Anderson first objects to a Conduent Payment Integrity Solutions list of Passport Health providers for containing collateral source information. (Pl.'s Mot. Lim. 6). The United States maintains that the information is relevant and demonstrates "the actual costs paid" by Anderson. (Def.'s Resp. 8-9). Both parties rely upon their arguments to the collateral source issue above. (*See supra*). At this time, the Medicaid payments do not appear to be "wholly independent" from the United States. *See Schwartz*, 175 S.W.3d at 626. Therefore, Anderson's objection is overruled, subject to clarification at trial.

Anderson's third objection focuses on an administrative claim form (SF 95). (Pl.'s Mot. Lim. 7). Anderson acknowledges he "does not object to reference to the form or discussion of the information in the form, but [he] reserves the right to object to the entry of portions of the form as an exhibit . . . ." (Pl.'s Mot. Lim. 7). This objection will be resolved as necessary at trial.

Finally, Anderson objects to a photograph depicting the leg injuries of the driver of the Postal Service vehicle, claiming it is not relevant because the driver is not claiming any injuries in this case. (Pl.'s Mot. Lim. 7). The United States asserts that the pictures are relevant to show the force of Anderson's vehicle and that Anderson was traveling too fast. (Def.'s Resp. 9).

Fed. R Evid. 401 categorizes "evidence [a]s relevant if it has any tendency to make a fact of consequence in determining the action more or less probable." *Frye v. CSX Transp., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019). "As indicated by its use of the phrase 'any tendency,' the Rule 401 standard is extremely liberal." *Id.* at 599 (citing Fed. R. Evid. 401). Ultimately, if evidence is relevant, then it is generally admissible. Fed. R. Evid. 402. "[A] piece of evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance the ball." *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009); *see United States v. Hazelwood*, 979 F.3d 398, 403 (6th Cir. 2020) ("[E]vidence must at least be 'a step on one evidentiary route to the

ultimate fact.'" (citation omitted)). Therefore, the photographs may bear upon Anderson's operation of his vehicle. As such, this evidence is not "patently inadmissible," nor does it have no "legitimate use at trial," so it would be improper to exclude such evidence through a motion in limine. *Stone*, 543 F. Supp. 3d at 539; *Mahaney*, 835 F. Supp. 2d at 303. Anderson's objection is overruled.

Therefore, Anderson's motion (DN 57) is granted in part and denied in part; his objections to the United States' witnesses are denied as moot; and his objections to the United States' exhibits are sustained in part and overruled in part.

### D. United States' Motion in Limine re: Dr. John Gormley

The United States moves to limit the testimony of Dr. Gormley so that he be precluded from "testify[ing] at trial about whether Anderson will need a surgery in the future or the cost associated with shoulder surgery." (Def.'s Mot. Lim. 4, DN 58). Dr. Gormley's expert report contains a cost projection of Anderson's recovery which includes costs of a future surgery, despite Dr. Gormley noting that Anderson's medical records indicated the procedure's likelihood was only "possible." (Def.'s Mot. Lim. 1-2). Therefore, the United States asserts that inclusion of these costs is too speculative. (Def.'s Mot. Lim. 4). Moreover, Dr. Gormley's disclosure did not suggest he would opine about the likelihood of a future surgery, so any such testimony would exceed the scope of his disclosure. (Def.'s Mot. Lim. 4).[4]

---

[4] The Court established the filing deadlines and specified, "There will be no replies." (Order 1-2). The United States filed a reply and now moves for *post hoc* leave to do so. (Def.'s Reply Mot. Lim., DN 71; Def.'s Mot. Leave File Reply, DN 72). The United States contends that its reply addresses issues first raised in Anderson's response. (Def.'s Mot. Leave File Reply 1-2). Therefore, the United States' motion for leave to file a reply is granted. *See Crenshaw v. Portfolio Recovery Assocs., LLC*, 433 F. Supp. 3d 1057, 1063 (W.D. Ky. 2020) (explaining that the court has the discretion to grant leave to file sur-replies when arguments are first raised in the reply).

Anderson contends that evidence of future care is admissible at trial if substantial evidence establishes that the injury may cause an increased likelihood of future complications, with Dr. Gormley's testimony meeting this criterion. (Pl.'s Resp. 4-5). Anderson insists that Dr. Gormley has the education and experience to testify whether future surgery is necessary. (Pl.'s Resp. 6-7). As for using of the term "possible," Anderson posits it was included "because [he] had not decided yet if he was going to have the surgery." (Pl.'s Resp. 8).

Fed. R. Civ. P. 26(a)(2)(B) discusses expert disclosures and requires a retained expert's report to contain "a complete statement of all opinions the witness will express . . . ." Fed. R. Civ. P. 26(a)(2)(B)(i). Anderson disclosed Dr. Gormley and indicated that he reviewed Anderson's medical records and would testify consistent to his report.[5] (Pl.'s Expert Witness Disclosure 5, DN 20). Dr. Gormley's report recounts Anderson's treatment following the collision and notes that Anderson "was evaluated by Dr. Chaitu Malempati – Orthopedic Surgery, who noted in report on Jan. 30, 2019 that if shoulder injections did not help, Mr. Anderson would need to have an arthroscopic labral repair." (Gormley Report 4). When addressing Anderson's expected course of future treatment, Dr. Gormley specifies that Anderson "will require additional medical care in the future for treatment of lumbar myofascial pain and left rotator cuff tendinosis," which would include pain and medication management appointments, periodic courses of physical therapy, and "follow up visits with Orthopedic surgery and possible left shoulder arthroscopic labral repair."

---

[5] The disclosure indicates that Dr. Gormley "evaluated Mr. Anderson and his medical records," but Dr. Gormley did not physically evaluate Anderson. (Pl.'s Expert Witness Disclosure 5; see Pl.'s Expert Witness Disclosure Ex. C, at 1, DN 20-3 [hereinafter Gormley Report] (detailing that the report was a preliminary medical record review and cost projection)). Anderson's response proffers an affidavit from Dr. Gormley, where he recounts "conduct[ing] a medical record review, telehealth examination, and review[] o[f the] University of Louisville physician's examination of Jonathan Anderson," but no information was provided to discern when this occurred. (Pl.'s Resp. Def.'s Mot. Lim. Ex. A, at ¶ 3, DN 62-1 [hereinafter Gormley Aff.]).

13

(Gormley Report 6).[6] The rest of the report details costs for orthopedic visits, arthroscopic labral repair surgery, and post-surgery recovery. (Gormley Report 6-7). It apparently was not disclosed that Dr. Gormley opined that Anderson would need surgery in the future or that Dr. Gormley would testify to that effect; instead, the only reference by Dr. Gormley was to Dr. Malempati's notes.[7] (Gormley Report 6-7). Dr. Gormley now asserts "it is clear that the injuries from the wreck have made it more likely than not that Mr. Anderson will need surgery to repair the labral tear . . . ." (Gormley Aff. ¶ 7). But this after-the-fact clarification does not alter his report's contents.

Anderson cites to decisions from the Southern District of Mississippi and the Middle District of Florida to maintain that a Dr. Gormley may testify about whether surgery is necessary. (Pl.'s Resp. Def.'s Mot. Lim. 6-7 (citing *Edwards v. Wal-Mart Stores E., L.P.*, No. 2:12-CV-116-KS-MTP, 2013 U.S. Dist. LEXIS 101502, at *3-4 (S.D. Miss. July 19, 2013); *Carlsen v. State Farm Mut. Auto Ins. Co.*, No. 6:16-cv-738-Orl-40TBS, 2018 WL 2773369 (M.D. Fla. May 14, 2018)). Both cases are distinguishable, however. The defendants in *Edwards* and *Carlsen* moved to preclude the testimony that future surgery was necessary, but both motions relied upon Fed. R. Evid. 702 and whether the physician was qualified to render the opinion. *Edwards*, 2013 U.S. Dist. LEXIS 101502, at *1-2; *Carlsen*, 2018 WL 2773369, at *1. The *Edwards* defendant argued the physician was not an orthopedic specialist, which the court rejected as differences in expertise go to credibility, not admissibility. *Edwards*, 2013 U.S. Dist. LEXIS 101502, at *4. The *Carlsen* defendant asserted that the physiatrist was not a surgeon and his dependence on medical literature

---

[6] Anderson has yet to undergo the procedure. (Def.'s Mot. Lim. 1-2; Pl.'s Resp. 3, 8).
[7] The United States relies upon Dr. Malempati's deposition, where he testified that surgery would still be an option if the test results and examinations were identical to Anderson's initial visit but did not specify that surgery would be necessary. (Def.'s Mot. Lim. 2-3 (citing Def.'s Mot. Lim. Ex. A, at 16:19-25, DN 58-1)). Dr. Gormley did not see the deposition before drafting his report, as Dr. Malempati's deposition was taken on June 23, 2022, and the report was created on June 22, 2021. (*See* Def.'s Mot. Lim. Ex. A; Gormley Report 1).

was not reliable, but the court rejected these contentions and found the physiatrist qualified based upon the literature review and his training and experience. *Carlsen*, 2018 WL 2773369, at *2-5. Notably, in both cases, the physicians examined the plaintiffs before personally concluding that surgery was necessary. *Edwards*, 2013 U.S. Dist. LEXIS 101502, at *1-2; *Carlsen*, 2018 WL 2773369, at *2.

That is not the case here. First, Dr. Gormley did not examine Anderson's shoulder, nor did his report indicate that he personally concluded surgery was necessary. (*See* Gormley Aff. ¶ 3; Gormley Report 7-8). Instead, he simply reiterated Dr. Malempati's assessment of surgery being a possibility. (Gormley Report 7). Second, the physiatrist in *Carlsen* crafted a report which explicitly discussed literature demonstrating a forty percent need for surgery in certain individuals and extrapolated that the plaintiff would have a more than fifty percent chance of surgery based upon his age. *Carlsen*, 2018 WL 2773369, at *3. Dr. Gormley did not conduct any such review, nor did he make any similar conclusions as to Anderson's situation. (*See* Gormley Report 6-7). Third, and most importantly, the need for future surgery is beyond the scope of Dr. Gormley's expert disclosure, which was not at issue in either case. Therefore, to the extent Dr. Gormley's testimony concerns his own opinion of Anderson's future surgical needs, it was not properly and timely disclosed under Fed. R. Civ. P. 26(a)(2)(B).

If a Rule 26 disclosure is untimely, Fed. R. Civ. P. 37(c)(1) provides that "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." *See Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) ("Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or substantially justified.'" (citation

omitted)); *see also Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) ("[T]he heart of Rule 37(c)(1) [is] separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." (internal quotation marks omitted) (quoting *Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART-EBA, 2016 U.S. Dist. LEXIS 139414, at *10 (E.D. Ky. Oct. 6, 2016))). The Sixth Circuit has indicated that "[t]he advisory committee's note to Rule 37(c) 'strongly suggests that "harmless" involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (quoting *Vance ex rel. Hammons v. United States*, No. 98-5488, 1999 U.S. App. LEXIS 14943, at *16-17 (6th Cir. June 25, 1999)). Courts analyze untimely disclosures using five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). Ultimately, it rests upon the potentially sanctioned party to "prov[e] that their noncompliance with the disclosure rules was substantially justified or harmless." *Morris v. Tyson Chicken, Inc.*, No. 4:15-CV-00077-JHM, 2019 U.S. Dist. LEXIS 208057, at *5 (W.D. Ky. Dec. 3, 2019) (citing *Roberts*, 325 F.3d at 782). Plaintiff has not met this burden.

Accordingly, Dr. Gormley will not be permitted to testify regarding his opinion of Anderson's future need for surgery. To the extent other evidence establishes a reasonable likelihood of future surgery, Dr. Gormley's testimony regarding surgery-related costs may be admitted. *See Stone*, 543 F. Supp. 3d at 539; *Sperberg*, 519 F.2d at 712.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion in Limine (DN 57) is **GRANTED IN PART and DENIED IN PART**.

2. Plaintiff's objections to Defendant's witnesses are **OVERRULED AS MOOT**.

3. Plaintiff's objections to Defendant's exhibits are **OVERRULED IN PART** and **SUSTAINED IN PART**.

4. Defendant's Motion in Limine to Limit the Testimony of Dr. John Gormley (DN 58) is **GRANTED IN PART** and **DENIED IN PART**.

5. Defendant's Motion in Limine to Exclude the Testimony of Dr. Sushma Chandan (DN 59) is **DENIED AS MOOT**.

6. Defendant's Motion for Leave to File a Reply (DN 72) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

January 12, 2023

cc: counsel of record